GEORGIA,
Chatham Co.
AUG. 1811.
Carnochan
vs.
Abrahams.

*Minutes of Superior Court, letter G. p. 363.*

*Chambers, August 23, 1811.*

CARNOCHAN *vs.* ABRAHAMS.

#### ESCHEAT.

By *Charlton*, Judge.

IN June last I gave a decision in this case, in which the justices of the court of ordinary of Glynn, were directed to commit the administration of the estate and effects of *Thomas B. M'Kinnon* to the appellant, *John Carnochan.* This mandate ought to have been obeyed as soon as the appellant was prepared to give the security which might be deemed sufficient by the justices. It appears from the affidavits before me, that application was made to their clerk, Mr. *Abrahams*, for administration, which he under various pretexts refused to grant. The first impression of the court was, that the granting of final administration, was a duty which the law devolved upon the clerk; and I was therefore disposed to award an attachment for the contemptuous manner, in which the authority and legitimate functions of this jurisdiction had been treated. But I am satisfied after a diligent investigation of the statutes, that the security offered by the administrator, must be approved of by the justices. After the delay which has taken place, and the apparent disrespect which has been paid to the decision of this court, I cannot expect that the justices will convene, upon the bare solicitation of the administrator. Mr. *Bulloch* may therefore take his motion for a mandamus, requiring the justices to convene for the purpose of approving the security which may be required, or which the administrator may offer; and for the purpose of granting the administration, and of delivering over the effects of the intestate, *Thomas B. M'Kinnon*, to

40

GEORGIA,
Chatham Co.
AUG. 1811.

Carnochan
vs.
Abrahams.

*John Carnochan* in conformity to the former judgment, and mandate of the court. And it is ordered, that for these purposes the peremptory mandamus do issue. And it is further ordered, that the said justices of the court of ordinary of Glynn do meet for the purposes aforesaid, at the court house in Brunswick, at 10 o'clock, A. M. of the first Monday of September next, being the third day of said month, which service the sheriff of the county of Glynn is charged to make without delay, on the receipt of said writ.

Yesterday, and subsequent to the motion of *Bulloch* for a mandamus, I received a notification, under the second sect. of escheat act of 1801, from the escheator, and clerk of the court of ordinary of Glynn, in which is stated, that *Thomas B. M'Kinnon* died without will and without heirs, leaving a considerable property behind, which the notification enumerated.

If I permit this notification to impede the administration, I should indirectly give weight to the *suggestion* of the escheator, which, according to the act of 1801, it can only receive from the investigation of a jury : and in the mean time the evil of leaving the property afloat, would result ; which would be protected in the hands of an administrator who had given security commensurate with the value of that property.

The principle of escheat, if it applies, does not under the act of 1801 (different proceedings are directed, if the intestate was an *alien* by the act of 1805) impair the right to administration until the jury make the inquest, and return the verdict on the report submitted to them, by the escheator and the judge. In the mean time, the supposed escheated property remains in the possession of those whose rights are ostensibly perfect, and such rights can only be divested by the verdict of a jury. Such is the effect and operation, as I conceive, of the act of 1801.

These being my impressions, the notification of the escheator will be submitted, as the law directs, to a jury at the next term.